GREAT WESTERN LAND
MANAGEMENT, INC.,
Appellant,

v.

Arthur SLUSHER, et al., Appellees.

Daniel D. STEWART, Jr.,
et al., Appellants,

v.

GREAT WESTERN LAND
MANAGEMENT, INC.,
et al., Appellees.

Arthur SLUSHER, et al.,
Cross–Appellants,

v.

GREAT WESTERN LAND
MANAGEMENT, INC., et
al., Cross–Appellees.

Nos. 94–SC–516–DG, 94–SC–522–
DG and 95–SC–431–DG.

Supreme Court of Kentucky.

Aug. 29, 1996.

As Modified on Denial of Rehearing
March 27, 1997.

Susan C. Lawson, Lawson & Lawson, P.S.C., Harlan, for appellant Great Western Land Management, Inc.

Karen J. Greenwell, Richard C. Ward, Wyatt, Tarrant & Combs, Lexington, Stuart Finestone, Finestone & Cardon, Atlanta, Georgia, for appellants Stewarts.

Keith Nagle, Glenn W. Denham, Denham, Golden & Nagle, Middlesboro, for appellees Slushers.

STEPHENS, Chief Justice.

This appeal concerns ownership of the mineral rights on a tract of land located in Knox County. The Slushers are the undisputed owners of the surface of the tract. The Stewart heirs hold the record title to the mineral estate on the property. Great Western Land Management Incorporated (Great Western) holds the mining leases, one from the Slushers and one from the Stewarts, on the property. The Slushers filed an action to quiet title of the mineral estate and for money damages from Great Western for failure to pay royalties. The Stewart heirs were also named as defendants. The trial court found that the Stewart heirs were the record

title holders of the mineral estate but the Slushers had gained legal title through adverse possession of the minerals for the required statutory period. Additionally, the trial court awarded $187,924.96 in damages to the Slushers. This amount equaled royalties Great Western would have owed to the Slushers for mining on the Knox County property. The trial court judgment was appealed by all parties. The Court of Appeals affirmed the award of money damages to the Slushers and remanded for further findings on the question of adverse possession. Great Western and the Stewart heirs moved this Court for discretionary review which we granted. The Slushers then made a cross-motion for review of the Court of Appeals decision regarding application of the champerty statute, which we granted.

The issues to be discussed in this opinion include application of the principles of adverse possession to a severed mineral estate; the applicability of the attornment statute; and, the applicability of the champerty statute. We find that as a matter of law the Slushers could not have gained legal title to the mineral estate through adverse possession and that neither the attornment statute or the champerty statute is applicable.

The Slushers and the Stewarts both trace their interest in the Knox County property to a common grantor, Isaac Mills. On August 4, 1899, Isaac and Margaret Mills deeded the Knox County property to Grant Taylor. Taylor did not record his deed until July 8, 1909. The Mills deeded the mineral underlying the same property to Dr. Samuel Bennett and Flem D. Sampson in 1903. This deed was recorded on December 24, 1904. The Slushers claim the property through the Taylor deed and the Stewarts claim through the mineral rights deed. The Slushers ownership of the surface rights to the Knox County property are not in dispute. The trial court found, and the issue was not appealed, that the Stewarts are the record title owners of the mineral estate underlying the Knox County property.

## I. Adverse Possession

█ In this state it has long been the law that the surface owner holds a severed mineral estate, acquired from a common grantor, in trust for the benefit of the mineral estate owner. KRS 381.430; *Foxwell v. Justice,* 191 Ky. 749, 231 S.W. 509 (1921). Because the surface owner is in the position of a trustee, "he cannot acquire title by adverse possession to the mineral estate except in the way and manner which a trustee of other real property may acquire title against the *cestui que* trust." *McPherson v. Thompson,* 203 Ky. 35, 261 S.W. 853, 854 (1924). A trustee can acquire title to the trust property, by adverse possession, against a *cestui que* trust, by repudiating the trust. A repudiation is required in order to convert the surface owner's permissive possession, as a trustee, of the mineral estate into possession that is hostile to the interest of the owner of the mineral estate. *See Ward v. Woods,* Ky., 310 S.W.2d 63 (1958).

█ In general terms, a "repudiation must be unequivocal and in violation of the duties of the trust." *First Kentucky Trust Co. v. Christian,* Ky., 849 S.W.2d 534, 537 (1993). This Court requires a separate formal repudiation of the trust relationship mandated by KRS 381.430.

> Under this statute [KRS 381.430], the Kentucky authorities are unanimous in holding that after severance of the mineral title one who acquires possession of the surface from the same grantor is deemed to hold possession of the minerals as trustee for the holder of the mineral title and, in the absence of an explicit disclaimer and clear repudiation of this subsisting relationship in a manner sufficiently open and notorious to bring home to the mineral owner knowledge or notice of the hostility of the surface holder's possession, the surface holder, being a trustee in possession, can never acquire title of his *cestui que* trust by any length of possession for his possession never becomes adverse. The possession of the mineral owner thus being preserved and protected by the statute is not lost nor its continuity interrupted by any length of non-user.

*Ward v. Woods, supra* at 65, *citing Kentucky River Coal Corp. v. Singleton,* 36 F.Supp. 123, 125 (E.D.Ky.1941). The surface owner "may repudiate the trust by acts or words

which clearly bring home to the mineral holder the knowledge that the surface owner is claiming the minerals adversely." *Diederich v. Ware,* Ky., 288 S.W.2d 643, 646 (1956). This Court, in *Diederich,* found that the mineral estate owners had "formal" notice that their interest was being invaded due to testimony in the record of a previous action concerning the same mineral deed. The notice given by the testimony alone was not sufficient. The Court found a repudiation of the trust only after taking into consideration the formal notice "together with the open and notorious operation of these two wells since that time, was sufficient to cause the limitation to run against the mineral owners." *Id.* at 647.

In the case at bar, the Slushers are required by KRS 381.430 to hold the mineral estate for the benefit of the Stewarts until there is a formal repudiation of that trust relationship. There is evidence in the record of contact between the lessees of the two families in 1982. It was in 1982 that Plastics Universal, lessee of the Stewarts, discovered the Stewarts ownership of the minerals underlying the Knox County tract. The Stewarts inherited this interest from their father's estate which included large mineral holdings. Plastics Universal leased all the mineral interests owned by the Stewarts and discovered the Knox County interest during a subsequent title search. The record shows that Plastics Universal contacted Monarch, holder of the Slusher lease on the Knox County property at the time, and informed them of the Stewarts' ownership. Monarch did not cease mining or give possession of the mineral estate to Plastics Universal. The only other evidence of any contact between the surface and mineral owners was an affidavit on a deed from 1910 which, at best, gives notice to the predecessors of the Slushers that the minerals had been severed. Regardless of the interpretation of the deed annotation, it was not signed by Dr. Bennet or Mr. Sampson, holders of the mineral estate at that time and could not give notice as to repudiation of the trust relationship.

■ It is not necessary for this Court to determine whether these facts constitute repudiation of the trust relationship between the Stewarts and the Slushers. The only possible action that would constitute a repudiation of the trust occurred in 1982. The statutory period required for adverse possession is fifteen (15) years, KRS 413.010. The Slushers stopped the statute running when they filed the quiet title action in 1990, seven years short of the required period. Therefore, as a matter of law, the Slushers did not obtain legal title to the mineral estate underlying the Knox County property through adverse possession.

■ Apparently there is confusion as to whether there is a requirement of a formal repudiation as evidenced by case law wherein this requirement has not been expressly applied. *See, Hoskins v. Northern Lee Oil & Gas Co.,* 194 Ky. 628, 240 S.W. 377, 380 (1922); *Hoskins, supra; Crabtree v. Petroleum Exploration, Inc.,* 282 Ky. 32, 137 S.W.2d 713 (1940); *Brockman v. Jones,* Ky.App., 610 S.W.2d 943 (1980). We see no need for such confusion and put it to rest with this opinion. When a surface owner is holding the mineral estate in trust, he or she must, before any statute begins to run, repudiate that trust by acts or words in such a manner as to clearly and unmistakably bring notice to the owner of the mineral estate. *See Diederich v. Ware,* Ky., 288 S.W.2d 643, 646 (1956).

## II. Attornment Statute

■ The attornment statute, KRS 383.100, prevents a tenant from denying the title of his landlord. Specifically, the statute provides that "the attornment of a tenant to a stranger shall be void, unless it be with the consent of the landlord." KRS 383.100. The Slushers contend that this statute prevents Great Western from denying their title. This argument is based upon the premise that Great Western came into possession of the mineral estate under the Slushers' lease and was thus legally attorned to the Slushers. This reasoning is fatally flawed.

■ Great Western came into possession of the mineral estate under *both* the Slusher and the Stewart leases. Clearly, the Stewarts were not "strangers," as they had record title ownership of the property, as recognized by Great Western and as the trial court so

found. *See Carr v. Smith,* 281 Ky. 750, 137 S.W.2d 415, 417 (1940). Consequently, the Slushers had no right to lease the mineral estate superior to that of the Stewarts. *See Kentucky–West Virginia Gas Co. v. Browning,* Ky., 521 S.W.2d 516, 518 (1975). Under these circumstances, there is no basis for the application of the attornment statute.

### III. Champerty

 The circuit court ruled that the Stewarts were barred from claiming title to the mineral estate under KRS 372.070, the champerty statute. The Court of Appeals found this ruling to be in error. We agree with the reasoning of the Court of Appeals on this issue. The champerty statute is designed to discourage litigation and therefore, is properly used as a shield. *See Thurman v. Doss,* 312 Ky. 603, 229 S.W.2d 317 (1950). The Slushers may not use the champerty statute as an offensive weapon.

### IV. Conclusion

The Court of Appeals reversed and remanded the trial court findings with regard to adverse possession of the mineral estate. Based on this Court's analysis of the law, the Slushers could not, as a matter of law, have gained adverse possession of the mineral estate. We therefore affirm the Court of Appeals reversal of the trial court; however, as all parties urge, we find no need for remand of this case. Secondly, the Court of Appeals affirmed the trial court award of money damages to the Slushers based on the attornment statute. We reverse that award for the reasons discussed above. Finally, the Court of Appeals dismissed the Slushers' cross-appeal as moot based upon the champerty statute. As noted above, we agree with the Court of Appeals' reasoning on this issue and therefore, affirm.

For the foregoing reasons, the Court of Appeals is reversed in part and affirmed in part.

All concur.