932 F.2d 967
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John M. COLVIN, Plaintiff-Appellant,
Hensley No. 1 Limited Partnership, Plaintiff,
v.
MAGNUM DRILLING OF OHIO, INC., Defendant-Appellee.
 No. 90-6369.
 United States Court of Appeals, Sixth Circuit.
 May 15, 1991.
 
 Before KEITH and MILBURN, Circuit Judges, and COHN, District Judge*.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant John M. Colvin appeals from the summary judgment for defendant-appellee Magnum Drilling of Ohio, Inc. ("Magnum") in this civil action, removed to federal court on the basis of diversity, based on an alleged reservation of rights in an oil well. For the reasons that follow, we affirm.
 
 I.
 
 2
 John M. Colvin is a resident of California, a licensed attorney, and has been engaged in oil and gas exploration in eastern Kentucky since 1984. Magnum is an Ohio corporation licensed to do business in Kentucky with its main office and principal place of business in Ashland, Kentucky. Magnum is wholly owned and operated by Thomas Crisp and James Large.
 
 
 3
 In 1985, the oil well which is the subject matter of this action, the Hensley No. 1, was drilled by the Hensley No. 1 Limited Partnership, of which Colvin is the general partner. For approximately one year the well produced marketable amounts of oil; however, it produced approximately twenty-five barrels of salt water for each barrel of oil. This significantly hampered the worth of the well as a producing oil well because of state and federal environmental regulations requiring that salt water be disposed of in a safe and satisfactory manner.
 
 
 4
 One acceptable method of disposing of salt water is by injecting it into underground geological formations through the use of a salt water disposal well. Consequently, Colvin and Magnum began to discuss the possibility of converting the Hensley No. 1 well to a salt water disposal well. On May 15, 1987, Colvin prepared and executed a document entitled "Assignment of Well Location" in favor of Magnum on the Hensley No. 1 well. The assignment was executed by Colvin in his personal capacity, as general partner of the Hensley No. 1 Limited Partnership, and as president of J.M. Colvin & Associates.
 
 
 5
 Magnum thereafter converted the Hensley No. 1 well to a salt disposal well. This required the expenditure of approximately $50,000 to $60,000 and a year's work. Among the equipment necessary was an injection pump, filters, tanks, pipe lines, and concrete casing.
 
 
 6
 After the well was successfully converted, Magnum began allowing others to inject salt water into the well for 85 cents per barrel. Colvin later admitted in deposition testimony that this was a "nominal figure." In April of 1988, Colvin used the Hensley No. 1 well as a disposal site for salt water produced by wells owned by his Little Sandy California Limited Partnership. Magnum billed Colvin at the rate of 85 cents per barrel, and Colvin paid without objection.
 
 
 7
 Later Colvin was billed for disposal of salt water from the Shepherd 3, 4, and 5 wells which he also owned. Colvin sent a check to cover the invoice charges, but the check was not signed. Upon return of the check by Magnum, Colvin voiced his objection to paying for use of the Hensley No. 1 site, claiming that the assignment reserved to him, as grantor, the right to disposal of salt water through the well site free of charge. When Colvin refused to pay the invoice, Magnum denied him access to the disposal facilities.
 
 
 8
 On August 31, 1989, Magnum secured a $10,000 judgment against Colvin in the Boyd Circuit Court of Kentucky on unrelated litigation. That same day Colvin filed this action in the Greenup Circuit Court, Kentucky. Colvin alleged that he had been wrongfully denied access to the disposal site based upon the following language in the assignment which Colvin claims reserved to him the right to continued access to the well site: "Said well shall be used as a water disposal well for the benefit of Grantors and other parties." Colvin asked that the assignment be declared void and, alternatively, sought damages and injunctive relief. On September 13, 1989, Magnum filed a petition for removal to district court.
 
 
 9
 After the action was removed, depositions were taken of Large, Crisp and Colvin. According to Large and Crisp, Colvin declined a joint venture, under the terms of which he would have shared in the expense of converting the well and could have used the well free of charge, in favor of having Magnum make the capital expenditure and Colvin paying for the services as they were needed. This also saved Colvin the expense of plugging the well. According to Colvin's deposition testimony, the agreement was that he could use the facility free of charge as part of the consideration for the assignment.
 
 
 10
 On July 13, 1990, Magnum filed a motion for summary judgment. On September 25, 1990, the district court granted Magnum's motion[1] and dismissed the action with prejudice. On October 24, 1990, Colvin[2] filed notice of appeal to this court.
 
 
 11
 The principal issue presented for review is whether the district court erred in granting summary judgment for the defendant on the question of plaintiff's alleged reservation of rights in the well site.
 
 II.
 A.
 
 12
 Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). It is apparent from the parties' arguments that they agree that Kentucky law controls the outcome in this diversity case. Under Kentucky law, construction of contractual terms is generally a question of law for the court. Kentucky Utilities Co. v. Carter, 296 Ky. 30, ----, 176 S.W.2d 81, 83 (1943). The question does not go to a trier of fact unless reasonable alternative interpretations exist upon considering a proffered interpretation in light of the circumstances surrounding the agreement. Cook United, Inc. v. Waits, 512 S.W.2d 493, 495 (Ky.1974). Similarly, construction of a conveyance is a legal question for the court. Belcher v. Elliott, 312 F.2d 245, ---- (6th Cir.1962); Phelps v. Sledd, 479 S.W.2d 894, 896 (Ky.1972). This court's review of these legal determinations, as well as the summary judgment, is de novo. See Whitney v. Brown, 882 F.2d 1068, 1071 (6th Cir.1989); Pinney Dock & Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 488 U.S. 880 (1988).
 
 B.
 
 13
 The assignment at issue in this case provides, in relevant part:
 
 
 14
 [I]n consideration of $10 and other good and valuable considerations, the receipt of which is hereby acknowledged, Grantors do hereby grant, convey and assign to Grantee all of their undivided interest in the Hensley # 1 well location....
 
 
 15
 * * *
 
 
 16
 Said well shall be used as a water disposal well for the benefit of Grantors and other parties.
 
 
 17
 This assignment is made without warranty, either express or implied. This assignment shall inure to the benefit of the heirs, legal representatives, successors and assigns of the parties hereto.
 
 
 18
 J.A. 9-10. The assignment, accompanied with a legal description of the well site and an acknowledgement before a notary public, was recorded by the Greenup County, Kentucky, clerk's office.
 
 
 19
 The district court found three reasons offered by the defendant to be persuasive bases for summary judgment. First, the district court reasoned that "[i]f such an agreement existed, it could not have been performed within one year and must have been oral rendering it unenforceable under the [Kentucky statute of frauds]." See Ky.Rev.Stat.Ann Sec. 371.010(7).
 
 
 20
 Second, the district court held that the language of the assignment did not support plaintiff's allegations. Plaintiff's claim was based upon language speaking of benefit to "Grantors and other parties." The court reasoned that since the Grantor was equally situated with other parties, and it was undisputed that other parties had been charged 85 cents a barrel, the agreement was not meant to give the Grantor free use of the well site.
 
 
 21
 Third, the court held that rules of contract construction followed by Kentucky courts foreclosed plaintiff's interpretation. Colvin, who is a licensed attorney in the state of Tennessee, prepared and drafted the assignment; therefore, the court construed the document against Colvin. See Pulliam v. Wiggins, 580 S.W.2d 228, 231 (Ky.Ct.App.1979) (lease construed against attorney-drafter). The court also found that the conduct of Colvin, in paying the first invoice without objection, was entitled to considerable weight in favor of the defendant's construction of the assignment. See Billips v. Hughes, 259 S.W.2d 6, 7 (Ky.1953) (construction of deed is best evidenced by parties' conduct with respect to the deed).
 
 
 22
 Plaintiff's attack on the district court's judgment is largely devoid of any legal authority. His challenge largely consists of phrasing the facts in such a way to show that it was questionable that he would have assigned the rights to a well which cost approximately $30,000 to drill to the defendants for practically no consideration.[3] This overlooks the gamble involved in drilling a well and the undisputed fact that defendants saved plaintiff the expense of capping the well. Plaintiff's argument appears to be based upon the commonsense notion that without ample consideration at the outset, the parties must have contemplated that plaintiff was to benefit in the future. Plaintiff goes on to characterize the language stating that "[s]aid well shall be used as a water disposal well for the benefit of Grantors and other parties," as "reservation language" reserving to himself the right to use the well for salt water disposal.
 
 
 23
 Although plaintiff's attack on the district court's judgment is unpersuasive, a few words are in order concerning the first ground relied on by the district court. The district court treated the alleged agreement as unenforceable under subsection (7) of the Kentucky statute of frauds, Ky.Rev.Stat.Ann. Sec. 370.010(7), because it could not be performed within one year. The problem with this approach is that the provision does not apply where one party has fully performed his obligations. See Pilcher v. Stadler, 276 Ky. 450, 124 S.W.2d 475, 479 (1939); Botkin v. Middlesborough Town & Land Co., 139 Ky. 677, 66 S.W. 747, 748 (1902) (statute did not apply because vendor had executed conveyance and put vendee in possession). From the uncontested facts in this case, it appears that plaintiff had fully performed his obligations under the contract.
 
 
 24
 However, the Kentucky statute of frauds would require that the assignment be in writing as a sale or lease of real estate. See Ky.Rev.Stat.Ann. Sec. 370.010(6); Appleby v. Buck, 351 S.W.2d 494, 495 (Ky 1961) (oil and gas lease); Owen v. Dayson, 562 S.W.2d 647, 648 (Ky Ct.App.1977) (working interest in oil well.) Since there was a written instrument in this case assigning rights to defendants, the question then becomes whether the language plaintiff relies on was effective to except or reserve rights in the well.
 
 
 25
 The court must first look within the four corners of the document. Kentucky--West Virginia Gas Co. v. Browning, 521 S.W.2d 516, 517 (Ky.1975). As noted by the district court, by the very language plaintiff relies on, he was placed on equal footing with "other parties" in regard to the right to use the well as a water disposal well. Plaintiff admits in his brief that any claim that the well could be used for the benefit "of others" without pay "would be ludicrous." Appellant's Brief at 7. Thus, as the district court determined, plaintiff's argument that the language, "said well shall be used as a water disposal well for the benefit of Grantors and other parties," was effective to reserve rights in the Grantor is unpersuasive.
 
 
 26
 The district court was also correct to hold that under Kentucky rules of construction, plaintiff's alleged interpretation of the assignment language was incorrect. Kentucky courts will construe a contract or conveyance against the party that prepared and drafted it. Pulliam, 580 S.W.2d at 231. Similarly, conveyances involving mineral properties are construed against the grantor. Witten v. Damron, 300 Ky. 29, ----, 187 S.W.2d 834, 835-36 (1945). In this case, the assignment was drafted by Colvin, the grantor, who is a licensed attorney.
 
 
 27
 Moreover, in interpreting a contract or conveyance, Kentucky courts give great weight to the contemporaneous construction that is given it by the parties. See Sword v. Sword, 252 S.W.2d 869, 870 (Ky.1952); Billips, 259 S.W.2d at 7. Here it is undisputed that plaintiff paid defendant's first invoice billed at 85 cents per barrel and took steps to pay the second.
 
 
 28
 Plaintiff argues that payment of one bill is "quite tenuous to establish a course of conduct necessary to invoke" the doctrine of contemporaneous construction. Appellant's Brief at 8. The problem with plaintiff's argument is that his claim to continued rights in the well site is even more tenuous. The language plaintiff relies on amounts to no more than a declaration of the purpose of the assignment and, thus, was not effective to limit the rights passed in the assignment. See Fayette County Bd. of Educ. v. Bryan, 263 Ky. 61, ----, 91 S.W.2d 990, 992 (1936). Plaintiff's testimony that the parties intended the reservation in his benefit is inconsistent with the plain language of the assignment and the rules of construction utilized by Kentucky courts. Therefore, plaintiff's testimony is insufficient under the circumstances to establish a genuine issue of material fact.
 
 III.
 
 29
 Accordingly, the summary judgment in favor of defendant is AFFIRMED.
 
 
 
 *
 Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 At the time the district court granted summary judgment, it also denied plaintiff's pending motion to compel answers to interrogatories concerning income generated from the disposal well. Plaintiff does not challenge this ruling on appeal, nor does he argue that discovery was inadequate
 
 
 [2]
 Since Colvin is the only plaintiff appealing, references herein to plaintiff are in the singular even though there was more than one plaintiff before the district court
 
 
 [3]
 Plaintiff states in his brief without citation to the record that defendants acknowledge having paid no consideration. It is the duty of the party opposing summary judgment to cite specific portions of the record in opposition to summary judgment; the court is not required to glean the record in search of some piece of evidence that might stave off a summary judgment. Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir.1989). Moreover, plaintiff's assertions contradict his recitation in the assignment of compensation received and ignore the saved expense of capping the well. Furthermore, under Kentucky law, as between the parties to a conveyance, it is effective without consideration. Sullenger v. Baker, 296 Ky. 240, 176 S.W.2d 382 (1944)